

HUNTON & WILLIAMS LLP
ENERGY PLAZA
30TH FLOOR
1601 BRYAN STREET
DALLAS, TEXAS 75201-3402

TEL    214 • 979 • 3000
FAX    214 • 880 • 0011

W. STEPHEN COCKERHAM
DIRECT DIAL: 214-979-3005
EMAIL: scockerham@hunton.com

May 4, 2005

FILE NO: 85379.040051

*Via Hand Delivery*

The Honorable Nancy Gertner
U. S. District Court
One Courthouse Way
Boston, MA 02210

Re:   *McGuinness v. TXU Energy Solutions LP and Scott Harrison*; U.S. District Court,
      District of Massachusetts; Civil Action No. 04CV-11170-NG

Dear Judge Gertner:

Defendants, TXU Energy Solutions LP ("TXU Solutions" or "Company") and Scott Harrison ("Harrison") (collectively, "Defendants"), respectfully submit this letter in connection with the Settlement Conference scheduled for May 5, 2005, pursuant to the Court's request.

As an initial matter, Defendants make an unopposed request to move back one week the dates for Defendants to file their summary judgment motion and for Plaintiff to file his response. During the Status Conference, the Court originally scheduled a Settlement Conference for April 26, 2005. Defendants were also ordered to file their summary judgment motion on or before May 6, 2005, with Plaintiff's response due May 27, 2005. At the request of Plaintiff, the Settlement Conference was subsequently moved to May 5, 2005. Defendants request that the date for it to file its summary judgment motion be moved to May 13, 2005 so that they may avoid unnecessary costs associated with preparing the summary judgment motion in the event the case may settle. Plaintiff's response would then be due on June 3, 2005. Plaintiff's counsel has stated that he has no objection to this request.

**I.   Plaintiff's Claims and Procedural Background.**

Plaintiff Patrick L. McGuinness claims that TXU Solutions retaliated against him in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended 42 U.S.C. § 2000(e), *et seq.*, and Massachusetts General Law, chapter 151B, section 4, paragraph 4 ("Section 4(4)") for complaining about discrimination against his manager, Henry Clay Cox, Jr. Mr. McGuinness also claims that Defendant Harrison aided and abetted in the alleged retaliation in violation of Massachusetts General Law, chapter 151 B, section 4, paragraph 5 ("Section 4(5)"). The parties have completed all fact discovery in this action except for the depositions



The Honorable Nancy Gertner
May 4, 2005
Page 2

of two former TXU Energy Human Resources Representatives scheduled for May 12, 2005. Mr. McGuinness' attorney has made an offer of settlement of $150,000.

## II.    Brief Summary of the Facts.

Patrick McGuinness was employed with TXU Solution's Strategic Accounts Business ("Strategic") as a Project Manager in the Company's Energy Savings Agreement Operations group ("ESA Group"). The ESA Group provided energy-saving consulting and project management services to clients that had an Energy Savings Agreement ("ESA") with TXU Solutions.

In December 2002, TXU Solutions decided to sell the entire Strategic business, including all ESA contracts, for financial reasons. The Company notified all Strategic employees by email December 31, 2002 that it was going to sell the ESA contracts and the sale would result in Strategic employees being laid-off. Additionally, Scott Harrison, Director of ESA Operations, specifically informed the ESA Group, including Mr. McGuinness, during a meeting in January 2003 that the Company was going to sell the ESA contracts and that the ESA employees would either go with the buyer(s) of the contracts or would be laid off. Mr. McGuinness does not dispute that he was aware in late 2002 or early 2003 of the Company's plans to sell the business and lay-off the ESA employees.

The Company started laying-off Strategic employees in connection with the sale efforts in early 2003. By March 2003, the Company had laid-off approximately half of the Strategic employees and planned to lay-off the rest of the employees by the end of the year. Mr. McGuinness and the other ESA Project Managers were given Completion Bonuses on or around January 20, 2003 to continue working until the earlier of July 21, 2003 or until they were no longer needed so that the Company would have employees to continue to service the ESA contracts while it attempted to sell them.

Because of a delay in the sale efforts, the Company was not able to sell the ESA contracts by July 2003 as it had originally planned. The ESA Group became upset about, among other things, the fact that their Completion Bonuses were about to expire and the Company had not offered them either new Completion Bonuses or severance packages, and started complaining incessantly.

Plaintiff's alleged complaint of discrimination was just one complaint of many regarding various matters from the ESA Group around that time. In the June-July 2003 timeframe, the Group complained relentlessly to management, making phone calls and sending emails and



The Honorable Nancy Gertner
May 4, 2005
Page 3

letters demanding that the Company address their concerns. Around the end of July, 2003 the complaining and insubordination finally reached a point where the Group completely refused to comply with management's directions and instructions until the Company provided them with what they wanted.

On July 22, 2003, Mr. McGuinness and the other members of the ESA Group sent a joint letter to the Company refusing to deal with management individually and demanded that the Company conduct all discussions and negotiations through their manager, Henry Clay Cox, Jr. The very next day, the Group followed-up with a joint email to the Company demanding that the Company provide them a full severance package. Kevin Bohn (Vice President) and Mr. Harrison responded to the situation by requesting that the entire ESA Group fly to Dallas, Texas for a meeting on July 30, 2003 to meet with management and Human Resources to discuss the sale of the business, its effect on the Group, and all other issues the Group had raised. The Group collectively refused to attend the meeting. When Mr. Bohn and Mr. Harrison informed the Group that the meeting was mandatory and that Human Resources would be available before and after the meeting, the Group responded with a joint-letter to Mr. Bohn on July 25, 2003 claiming that "upper management" was attempting to "undermine" the Group's attempts to bring their complaints to Human Resources and that the **Company had been discriminating against Mr. Cox**. Additionally, Mr. McGuinness, Chris Weisenfels, and Connie Johnson sent individual complaints to Human Resources complaining of, among other things, racial discrimination against Mr. Cox. Mr. McGuinness sent his individual complaint via email to Pat Dixon in Human Resources on July 24, 2003.

Because of the Group's continued demands for a resolution to the situation, the Group's asserted refusal to continue working, and the fact that the status of the sale was uncertain, Mr. Bohn asked Mr. Harrison to determine how many ESA employees he needed until the Company could sell the contracts. Based on the remaining contracts, Mr. Harrison determined that the Company could eliminate three positions, including Mr. McGuinness' position. Mr. Bohn approved the reduction-in-force. On August 1, 2003, the Company notified Mr. McGuinness that he was being laid-off as part of the ongoing reduction-in-force, with a full



The Honorable Nancy Gertner
May 4, 2005
Page 4

severance package.[1] In September 2003, the Company offered each of the remaining ESA Project Managers, including those that also complained about discrimination, a retention bonus to stay with the Company until it could sell the remaining contracts, or they were no longer needed.

The Company was able to either sell, subcontract, or terminate all of the ESA contracts by March 2004, at which point the Company laid-off the remaining members of the ESA Group with severance. The ESA Group ceased to exist as of the end of March 2004 -- only 7 months after Mr. McGuinness' separation from the Company.

### III.  Mr. McGuinness' Retaliation Claims.

Mr. McGuinness claims that his separation from the Company was unlawful retaliation for his July 24, 2003 complaint of discrimination to Human Resources. Mr. McGuinness' retaliation claims are not supported by the facts or the law. First, his separation from the Company was the result of the sale of the Strategic business set in motion at least 6 months before Mr. McGuinness sent his complaint to Human Resources. Thus, Plaintiff cannot establish a causal connection between Mr. McGuinness' complaint and his being laid-off, and his claims must fail. *See Clark County School Dist. V. Breeden*, 532 U.S. 268 (2001)(holding that close temporal proximity is "no evidence whatever of causality" if the employer was merely proceeding with previously contemplated and/or planned actions with regard to the plaintiff, such as a transfer or lay off); *see also Hoeppner v. Crotched Mountain Rehabilitation Ctr.*, 31 F.3d 9, 12, 14-16 (1st Cir. 1994); *Dziamba v. Warner & Stackpole LLP*, 778 N.E.2d 927 (Mass. 2002)(state law retaliatory discharge claim); *MacCormack v. Boston Edison Co.*, 423 Mass. 652, 662 n.11 (1996); *Prader v. Leading Edge Prods., Inc.*, 659 N.E.2d 756 (Mass. 1996)(same). Mr. McGuinness admits that he knew more than 6 months before he made his complaint to Human Resources that his employment with the Company would end soon. Moreover, Mr. McGuinness sent his complaint just one day after requesting a severance

---

[1] The Company allowed Plaintiff to stay on the payroll until August 31, 2003 to apply for open positions in the Company, but Plaintiff did not apply for any. Mr. McGuinness was offered, yet refused, the same severance offer that the other ESA Project Managers received. Pursuant to the Company's severance plan, the Company offered Mr. McGuinness a severance payment equal to 8 weeks of pay totaling $8,850.00.



The Honorable Nancy Gertner
May 4, 2005
Page 5

package in connection with the sale of the business. Therefore, as in *Clark*, Plaintiff cannot establish a *prima facie* case of retaliation.

Similarly, the timing of Plaintiff's lay-off will not establish pretext either. *See Ianetta v. Putnam Investments, Inc.*, 2002 U.S. Dist. LEXIS 3277, *30 (D. Mass. 2002). Moreover, the reasoning behind the Company's decision to lay-off Plaintiff was decidedly logical and Plaintiff cannot rebut it and establish pretext. The Company had to retain some ESA employees in order to meet its contractual obligation to provide service to its clients. The Company laid-off McGuinness because he was the only Project Manager with one ESA contract. In December 2002, McGuinness was managing five ESA contracts, but by the end of the first quarter of 2003, the Company had sold or otherwise disposed of all of McGuinness' contracts except one. Another Project Manager, Mr. Weisenfels -- who also complained of discrimination -- had two other contracts in the same geographic region as Mr. McGuinness' contract and the Company decided to consolidate the three contracts with Mr. Weisenfels. The Company consolidated the contracts with Mr. Weisenfels, rather than Mr. McGuinness, because he was more experienced and had previous contact and experience with Mr. McGuinness' client. Quite simply, it made no sense to have two Project Managers assigned to three contracts.

### IV. Mr. McGuinness' Aiding and Abetting Claim against Scott Harrison.

Mr. McGuinness' claim against Mr. Harrison for aiding and abetting also fails because TXU Solutions did not engage in unlawful activity. Mr. Harrison cannot be responsible for "aiding and abetting unlawful discrimination that simply did not exist." *Ligenza v. Genesis Health Ventures of Massachusetts, Inc.*, 995 F. Supp. 226, 233 (D. Mass. 1998).

### V. Damages.

Even if Mr. McGuinness were able to prevail at trial, his damages would be very limited. Mr. McGuinness has requested that this Court award him:

- "damages sufficient to compensate him for his loss of earnings, past and future, and for his mental anguish and suffering;"

- "punitive damages pursuant to the provisions of 42 U.S.C. § 1981(a) and G.L. c. 151B Section 9;"

- "costs and disbursements...including his reasonable attorney's fees;" and



The Honorable Nancy Gertner
May 4, 2005
Page 6

- "such other and further relief as [the Court] deems to be just and proper."

Back Pay

Mr. McGuinness' back pay damages are limited. The Company noticed every single remaining ESA Project Manager on March 31, 2004 that they were being laid off, and removed them from the payroll effective April 30, 2004. Thus, at the very most, Mr. McGuinness would have been on the Company's payroll for another eight months. Plaintiff's salary at the time of his separation from the Company was $4,425 per month. In his Rule 26 disclosures, Plaintiff states that the value of his benefits was 20% of his salary. However, in Plaintiff's May 2, 2005 letter filed with the Court for the May 5, 2005 Settlement Conference, Plaintiff restates the value as 25%. Even assuming 25%, Plaintiff's potential back pay award for eight months, plus benefits, equals $44,250.

Mr. McGuinness' damages should be mitigated to reflect the compensation he earned while working for his former manager, Mr. Cox, after his termination. Defendants have requested further information from Plaintiff regarding his subsequent employment and pay in order to be able to accurately estimate Plaintiff's mitigation, but do not have that information at this time. However, Mr. McGuinness testified during his deposition that he started working for Mr. Cox in September 2003 for $80,000 per year, but that amount was subsequently reduced to $60,000 per year because Mr. Cox allegedly could not afford to pay Mr. McGuinness. Mr. McGuinness further claims that he had to pay expenses out of his salary and therefore only made between $30,000 and $40,000 per year, and that he did not receive benefits. Even assuming Mr. McGuinness was making as little as $35,000 starting September 1, 2003, without benefits, his lost wages and benefits should be mitigated $23,333 for a **total back wages and benefits amount of $20,917**.

Mr. McGuinness also claims that he would have received the retention bonus offer the other Project Managers received in September 2003 if the Company would not have let him go. Even assuming this is true, the retention bonus for the ESA Project Managers was only 30% of base salary (Plaintiff's base salary was $53,100) for a base award of $15,930. For Project Managers who received the bonus, the Company multiplied 75% of the base award by a performance factor of 1.5, and the other 25% by a performance factor of 1 for a **total bonus amount of $21,903.75**.

**Thus, the back wages, benefits and retention bonus total $42,820.75.**



# HUNTON & WILLIAMS

The Honorable Nancy Gertner
May 4, 2005
Page 7

### Compensatory and Punitive

Finally, Mr. McGuinness' claims for compensatory and punitive damages under federal law are capped at $300,000. Mr. McGuinness has a limited claim for compensatory damages and there is no basis for a finding of punitive damages based on the evidence.

## VI.    Conclusion.

Mr. McGuinness' claims are baseless and his claims for damages are limited under the facts. Accordingly, Defendants have previously offered to settle for $8,850.00 (the amount of his severance offer).

Sincerely,

W. Stephen Cockerham

WSC:bls